UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIMAVEN, INC., <br><br> Plaintiff, <br> v. <br><br> TEXAS TR, LLC and SAM MARINO, <br><br> Defendants. | CIVIL ACTION 2:17-cv-12008-SDW-LDW <br><br> ELECTRONICALLY FILED <br><br> DECLARATION OF SHMAYA MARINOVSKY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS |

**SHMAYA MARINOVSKY**, of full age and upon his oath declares as follows:

1. I am a Defendant, named incorrectly in the caption as Sam Marino. I am also the Chief Operating Officer and a principal of Defendant Texas TR, LLC ("TTR").

2. I submit this Declaration in support of TTR's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

3. I am fully familiar with the facts giving rise to this matter.

4. TTR is a private LLC organized under the laws of the state of Texas, with its principal place of business at 11170 Dover St., #A6, Houston, Texas. TTR has no corporate owner or member, and there is no publicly held corporation owning more than 10% of its membership interest.

5. I am a resident of Harris county, Texas.

6. TTR is in the business of distributing and marketing major brands of cameras, both still and video, and related electronics, and maintains a website accessible at http://www.texastr.com.

7. TTR has no office, employees, property, bank accounts, address, telephone number, or any other physical presence in the State of New Jersey.

8. I have no office, employees, property, bank accounts, address, telephone number, or any other physical contact with the State of New Jersey.

9. I'm advised that in paragraph 8 of Plaintiff's Complaint against me and TTR, Plaintiff claims that on July 13, 2016, Defendants initiated the business relationship giving rise to this action. That is not accurate.

10. In fact, Plaintiff contacted Defendants. Specifically, Plaintiff's representative Alex Blaker was introduced to me by email on July 1, 2016, by a mutual acquaintance who had learned that Plaintiff could no longer sell its products directly to Amazon.

11. Since, in contrast, TTR could sell directly to Amazon, Plaintiff desired to do business. After several days of email and telephone conversations, TTR and Plaintiff began their business relationship, as follows.

12. TTR would list items in Plaintiff's inventory for sale on Amazon.com.

13. When Amazon submitted a purchase order for a given item to TTR, TTR would submit a matching purchase order to Plaintiff.

14. Plaintiff would then ship the item in question directly to Amazon. When Amazon paid TTR, TTR would give the proceeds to Plaintiff, less a minor commission.

15. These transactions were accomplished through (i) the mail, (ii) telephone calls and emails with Plaintiff's employees, and (iii) periodic bank transactions. The business relationship between Plaintiff and TTR involved no other contact with any person, place, or thing in the State of New Jersey.

16. Furthermore, it is not true that TTR was "sloppy" in its payments to Plaintiff. TTR's ability to pay Plaintiff was restricted by the payments it received from Amazon. In turn, Amazon's payments to TTR were often delayed by the need to resolve discrepancies in quantity between Plaintiff's shipments, and the purchase orders in question.

17. On September 15, 2016, TTR received its final purchase order for one of Plaintiff's products from Amazon.

18. In November 2016, Amazon froze TTR's account altogether, and stopped remitting all payments. TTR has received no financial benefit from the interruption– in fact, it has disrupted relationships with other business partners.

19. On information and belief, Amazon froze TTR's account because a major computer company had alleged that counterfeit goods were being sold through it.

20. Plaintiff shipped many items from that major computer company to Amazon in response to purchase orders relayed by TTR, including the specific type of item alleged to be counterfeit.

21. The dispute over the allegedly counterfeit goods was ultimately resolved through a confidential settlement agreement. Amazon has not, however, released the funds it froze.

I declare that the statements made by me above are true. If any of the above statements are willfully false, I understand that I may be subject to punishment.

Dated:  December 13, 2017

_____
Shmaya Marinovsky