<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNIMAVEN, INC., | Civil Action No. 17-12008 (SDW) (LDW) |
| Plaintiff, | |
| v. | **OPINION** |
| TEXAS TR, LLC, *et al.*, | |
| Defendants. | September 8, 2020 |

**WIGENTON,** District Judge.

Before this Court are: (1) Plaintiff Unimaven Inc.'s ("Plaintiff") Motion for Default Judgment against Defendant Texas TR, LLC ("TTR") pursuant to Federal Rule of Civil Procedure ("Rule") 55[1] (D.E. 86); (2) Plaintiff's Motion for Summary Judgment against Defendant Shmaya Marinovsky[2] ("SM") pursuant to Rule 56 (D.E. 87); (3) SM's Cross-Motion for Summary Judgment pursuant to Rule 56 (D.E. 88);[3] and (4) Plaintiff's Motions for Sanctions against TTR and SM (collectively "Defendants"), as well as Defendants' former counsel Becker & Poliakoff, LLP ("B&P"), pursuant to Rules 37 and 11 (D.E. 86, 87).  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without

---

[1] The Court construes Plaintiff's motion for default judgment as falling under Rule 55.

[2] Shmaya Marinovsky is also referred to as "Sam Marino" in the case caption and the parties' briefing.  For simplicity, the Court will refer to this defendant as "SM."

[3] SM filed two identical cross-motions for summary judgment: Docket Entry Numbers 88 (notice of motion) and 88-1 (brief in support) were filed as one document at Docket Entry Number 89.  This Court cites to the brief in support of SM's first cross-motion for summary judgment only.  (*See* D.E. 88-1.)  Additionally, SM's cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment are identical except for the sections entitled "Conclusion."  (*Compare* D.E. 88-1, *with* D.E. 97.)

oral argument pursuant to Rule 78.  For the reasons stated herein: Plaintiff's Motion for Default Judgment is **GRANTED in part** with the requirement that Plaintiff submit supplemental documentation in support of its claimed damages and **DENIED in part**; Plaintiff's Motion for Summary Judgment is **DENIED**; SM's Cross-Motion for Summary Judgment is **GRANTED**; Plaintiff's Motion for Sanctions pursuant to Rule 37 against TTR is **GRANTED** with the requirement that Plaintiff submit supplemental documentation in support of its claimed attorneys' fees; Plaintiff's Motions for Sanctions pursuant to Rule 37 against B&P and SM are **DENIED**; and Plaintiff's Motions for Sanctions pursuant to Rule 11 against B&P and Defendants are **DENIED**.

## I.      PROCEDURAL HISTORY

In short, Plaintiff's Amended Complaint arises from TTR's alleged failure to pay Plaintiff for electronics sold on TTR's Amazon account in accordance with an agreement between the parties.  (*See generally* D.E. 10 ("Am. Compl.").)  Plaintiff asserts claims against TTR for (1) breach of contract (Count I); (2) breach of the implied covenant of good faith and fair dealing (Count II); (3) fraud (Count III); and (4) unjust enrichment (Count IV).  (*Id.* ¶¶ 20–48.)  Plaintiff raises Counts I–IV against SM as an alleged principal/owner of TTR under an alter ego theory, as well as a separate count for alleged piercing of TTR's corporate veil (Count V).  (*Id.* ¶¶ 3, 20–54.)

Relevant here, Defendants filed an Answer and TTR filed Counterclaims against Plaintiff. (D.E. 12.)  On January 2, 2020, this Court granted former counsel for TTR's unopposed motion to withdraw and ordered that TTR appear by new counsel given its status as a corporate entity.  (D.E. 77 at 2.)  TTR did not appear by counsel and failed to respond to this Court's subsequent Order to Show Cause as to why TTR's Answer and Counterclaims should not be stricken.  (D.E. 80.)  Thus, this Court adopted Magistrate Judge Leda D. Wettre's Report and Recommendation ("R&R")

(D.E. 84) striking TTR's Answer and Counterclaims.  (D.E. 95.)  The Answer remained, however, as asserted by SM.[4]  (*See id.*)  In light of the Court's January 2, 2020 Order and subsequent R&R reiterating that TTR faced default should it fail to appear with counsel (*see* D.E. 77 at 2; D.E. 84 at 2), this Court further directed the Clerk of the Court to enter default against TTR.  (D.E. 98.)

On March 26, 2020, this Court granted Plaintiff leave to file motions for default judgment against TTR and summary judgment against SM (*see* D.E. 85), which were filed on April 9, 2020. (D.E. 86, 87.)  In the same motions, Plaintiff moved for sanctions pursuant to Rules 37 and 11 against Defendants and their former counsel, B&P.  (D.E. 86, 87.)  Although this Court granted SM leave to file a cross-motion for summary judgment together with his response to Plaintiff's motion for summary judgment (*see* D.E. 85), SM filed a separate cross-motion for summary judgment and opposition docketed on April 14, 2020, and June 16, 2020, respectively.  (D.E. 88, 97.)  In addition, B&P filed an opposition to Plaintiff's motion for Rule 37 and 11 sanctions against it on May 4, 2020.  (D.E. 94.)  Plaintiff declined to reply to oppositions filed by B&P and SM.

## II.     FACTUAL BACKGROUND

### A.  Undisputed Material Facts

Here, Plaintiff filed a Statement of Undisputed Material Facts with a corresponding certification from Plaintiff's President including exhibits.  (*See generally* D.E. 87-1 ("Plt. SMF"); *see also* D.E. 87-3 ("Blaker Cert.") (attaching exhibits)).[5]  Because the Court's adjudication of the

---

[4] The Court notes that SM did not assert any counterclaims against Plaintiff.  (*See* D.E. 12; D.E. 84 at 2 n.1 (noting that only TTR alleged counterclaims against Plaintiff; D.E. 82 at 1 (same).)  Thus, while SM states that he "do[es] not object to the claims brought forth by [himself] to be dropped from the case," and Plaintiff maintains that "[SM's] Counterclaim still exists" (*see* D.E. 97 at 8; D.E. 87-2 at 15), the record makes clear that there are no counterclaims currently before this Court.

[5] Because SM failed to file a responsive statement of material facts as required under the Federal and Local Rules, Plaintiff's Statement of Undisputed Material Facts may be considered undisputed.  *See* Fed. R. Civ. P. 56(e)(2); L. Civ. R. 56.1(a) (stating that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion"); *see also Robinson v. N.J. Mercer County Vicinage - Family Div.*, 562 F. App'x 145, 147, 149 (3d

3

parties' motions for summary judgment ultimately rests on what the record lacks, the Court writes primarily to provide context for the reader.  Plaintiff sells electronic and equipment, including Apple and Microsoft products.  (Plt. SMF ¶ 1.)  On July 1, 2016, Ari Marinovsky emailed Plaintiff to introduce his brother, SM,[6] and solicit business for TTR's Amazon account.  (*Id.* ¶¶ 2, 3; Blaker Cert. at 85, Ex. K;[7] *see also* D.E. 97 at 2.)  This email stated that "[SM] has a great thing going with vendor central [Amazon]" and "guarantee[d] [that] going with [Defendants] w[ould] raise [Plaintiff's] bottom line."  (Plt. SMF ¶ 3; Blaker Cert. at 85, Ex. K.)  The same email also provided that there would be "no returns."  (Plt. SMF ¶ 3; Blaker Cert. at 85, Ex. K.)

Plaintiff and TTR entered an agreement where Plaintiff would provide goods for sale through TTR's Amazon account.  (Plt. SMF ¶¶ 2, 4–5; Blaker Cert. ¶¶ 3, 5–6; D.E. 97 at 2.)  Under the agreement, TTR would submit purchase orders that it had received from Amazon to Plaintiff and, in turn, Plaintiff would ship products directly to Amazon.  (Plt. SMF ¶¶ 2, 5; Blaker Cert. ¶¶ 3, 6; *see* D.E. 97 at 2.)  TTR would then remit proceeds, less profits, to Plaintiff.  (Plt. SMF ¶ 5; Blaker Cert. ¶ 6; D.E. 97 at 2.)  TTR, however, made several late payments, and by November 23, 2016, ceased payments to Plaintiff completely.  (Plt. SMF ¶¶ 8–9; Blaker Cert. ¶¶ 9–10.)  The outstanding balance owed to Plaintiff totals $159,309.17.  (Plt. SMF ¶ 12; Blaker Cert. ¶ 13.)

At an unspecified time, Apple apparently conducted test purchases of TTR's products and

---

Cir. 2014).  Given SM's *pro se status*, however, the Court will not deem any fact undisputed to the extent it appears to be contested by SM *and* is unsupported in the record submitted by Plaintiff.

[6] Although Plaintiff maintains that SM owned 5% of TTR, the Court considers SM's ownership to be a disputed fact. First, the 2015 employment agreement purportedly between SM and TTR cited in support of Plaintiff's assertion was not executed.  (Plt. SMF ¶ 32; *see* Blaker Cert. at 94–103, Ex. N.)  Second, SM contends that he was an employee at TTR, which is, at minimum, supported by the record.  (*See* D.E. 97 at 2; *see also* Blaker Cert. at 87, 90, 92, Exs. K–M (noting, in SM's email signature block, his title of "Chief Operations Officer/ Business Development" at TTR).)

[7] All page references to the Blaker Certification and exhibits included therein are to the ECF pagination in the upper right-hand corner.

informed TTR that the products were counterfeit.  (Plt. SMF ¶ 6; Blaker Cert. ¶ 7.)  The record

submitted by Plaintiff reflects, and SM concedes, that Apple contacted TTR on October 21, 2016,

regarding the allegedly counterfeit Apple goods sold on TTR's Amazon account.[8]  (Blaker Cert.

at 51, Ex. H; D.E. 97 at 3; *see* Plt. SMF ¶ 6; *see also* Blaker Cert. ¶ 7.)  Plaintiff received an email

from SM on December 2, 2016, indicating that Amazon withheld payments on TTR's Amazon

account, which had been shut down.  (Plt. SMF ¶ 14; Blaker Cert. ¶ 15; *id.* at 92, Ex. M.)

## III.   LEGAL STANDARDS

### A.  Default Judgment

Federal Rule of Civil Procedure 55(a) permits the entry of default against a party who "has

failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R.

Civ. P. 55(a).  "Once a party has defaulted, the consequence is that the factual allegations of the

complaint, except those relating to the amount of damages, will be taken as true."  *Teamsters*

*Pension Fund of Phila. & Vicinity v. Am. Helper*, Inc., No. 11-624, 2011 WL 4729023, at *2

(D.N.J. Oct. 5, 2011) (internal quotations omitted).  After default is entered, the moving party

"may seek the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2)."

*Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

"The entry of a default judgment is largely a matter of judicial discretion, although the Third

Circuit has emphasized that such discretion is not without limits, . . . and [has] repeatedly state[d]

[its] preference that cases be disposed of on the merits whenever practicable."  *Chanel, Inc. v.*

*Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (internal quotations omitted).

When determining whether to enter a default judgment, the Court must first: "(1) determine

it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have

---

[8] Whether SM had knowledge of allegedly counterfeit goods sold on TTR's Amazon account prior to July 2016 is contested by SM, and is not supported in the record submitted by Plaintiff.  (*See* D.E. 97 at 3.)

been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Travelodge Hotels, Inc. v. Wilcox Hotel, LLC*, No. 17-0391, 2018 WL 1919955, at *3 (D.N.J. Apr. 23, 2018).   The Court must also consider: "(1) the prejudice suffered by the party seeking default; (2) whether the party subject to default has a meritorious defense; and (3) the culpability of the party subject to default." *Super 8 Worldwide, Inc. v. Mahesh, Inc.*, No. 18-16336, 2019 WL 3244878, at *2 (D.N.J. July 19, 2019) (citing *Doug Brady, Inc.*, 205 F.R.D. at 177).   "All doubts must be resolved in favor of proceeding on the merits."  *Id.*

### B.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party

meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## C. Sanctions

### i. Rule 37 Sanctions

Under Rule 37(b)(2)(A), the court may impose sanctions when a party "fails to obey an

order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Among a wide range of repercussions, sanctions may include dismissal and default judgment. Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi). Although the imposition of sanctions is "generally entrusted to the discretion of the district court," *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007), Rule 37(b)(2) limits the court's discretion. *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018). Any sanction issued must be "just" and "the sanction must be *specifically related* to the particular 'claim' which was at issue in the order to provide discovery." *Harris v. City of Phila.*, 47 F.3d 1311, 1330 (3d Cir. 1995) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982)).

When considering whether to dismiss a case under the purview of Rule 37, the court weighs six factors enumerated in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).[9] *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 101 (D.N.J. 2006) ("When . . . a court is asked to sanction a party by depriving the party of the right to proceed with or defend against a claim, the court applies the analysis established in *Poulis* [].."); *see Hogan v. Raymond Corp.*, 536 F. App'x 207, 212 (3d Cir. 2013). In addition or alternative to dismissal, the court may impose on a party and/or its attorney, reasonable expenses including attorney's fees, "caused by unjustified failure to comply with discovery orders or pretrial orders." *Virtual Studios, Inc. v. Art Flock & Screen, Inc.*, No. 11-0622, 2015 WL 6150944, at *3 (D.N.J. Oct. 19, 2015); Fed. R. Civ. P. 37(b)(2)(C).

## ii.    Rule 11 Sanctions

Pursuant to Rule 11, "after notice and a reasonable opportunity to respond . . . the court

---

[9] The factors include: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis*, 747 F.2d at 868 (emphasis omitted).

may impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation."  Fed. R. Civ. P. 11(c).  In relevant part, Rule 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Ultimately, sanctions under Rule 11 are "intended to discourage the filing of frivolous, unsupported, or unreasonable claims." *Leuallen v. Borough of Paulsboro*, 180 F. Supp. 2d 615, 618 (D.N.J. 2002).

The Third Circuit has reiterated that the well-established legal standard to evaluate conduct alleged to have violated Rule 11 is "reasonableness under the circumstances" which remains "within the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x 174, 185 (3d Cir. 2008).  Reasonableness is "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Prods. Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (internal quotations omitted). "Generally, sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Id.* (internal quotations omitted).  "Courts . . . have denied sanctions where the law and facts, even if not adopted by the court, are ambiguous and could be reasonably interpreted in more than one way." *In re Cendant Corp. Derivative Action Litig.*, 96

9

F. Supp. 2d 403, 405 (D.N.J. 2000) (citing *Ford Motor*, 930 F.2d at 289–90).

## IV.   DISCUSSION

### A.  Default Judgment Against TTR

#### i.    Entry of Default

First, the Court must ensure that default was properly entered by the Clerk of the Court. For the reasons stated therein, this Court ordered that the Clerk of the Court enter default against TTR.  (D.E. 98.)  TTR was fully aware that its failure to plead or otherwise defend this action would result in its default since at least January 2, 2020.  Thus, the Clerk's entry of default was proper under Rule 55(a).  *See TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2016 WL 5660426, at *3 (D.N.J. Sept. 29, 2016) (finding entry of default appropriate where "[d]efendants were informed by the Court that they needed proper representation on three separate occasions [and] failed to appear with proper representation or otherwise defend th[e] action.").

#### ii.    Jurisdiction and Proof of Service

Next, the Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties" when a motion for default judgment is made against a non-appearing party. *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008).  Here, the Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332.  Plaintiff is a corporation with its principal place of business in Hackensack, New Jersey; TTR's principal place of business is in Houston, Texas; and the amount in controversy exceeds $75,000.  (Am. Compl. ¶¶ 1–2, 17.)  The Court also has personal jurisdiction over TTR because it conducted business in New Jersey, made contacts with Plaintiff in New Jersey, and entered into a business arrangement with Plaintiff, a New Jersey corporation. *See ACP GP v. United Home Care, Inc.*, No. 18-8786, 2018 WL 4693969, at *5 (D.N.J. Oct. 1,

2018) ("Where a party purposefully avails himself of the laws of New Jersey by entering an agreement with a New Jersey company whose effects would be felt in New Jersey, a court located in New Jersey may properly exercise personal jurisdiction over him.") (citing *Print Data Corp. v. Morse Financial, Inc.*, No. 01-4430, 2002 WL 1625412, at *3–4 (D.N.J. July 12, 2002))); (*see generally* Am. Compl.)

In addition, the Court finds that proof of service is sufficient in this case.  The Amended Complaint was served on TTR on May 24, 2018 via CM/ECF.  (D.E. 11.)  Moreover, B&P timely served TTR with copies of the Court's January 2, 2020 Order granting its motion to withdraw as TTR's counsel.  (*See* D.E. 77, 78, 79.)

### iii.    Causes of Action

#### 1.    Contract Claims

Under New Jersey law, the elements of a breach of contract claim are: "a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Peck v. Donovan*, 565 Fed. App'x. 66, 70 (3d Cir. 2012) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. App. Div. 2007)).  Plaintiff maintains that it entered an agreement with TTR where Plaintiff agreed to ship electronic goods directly to Amazon after it received a purchase order from TTR.  (Am. Compl. ¶¶ 8–12; D.E. 86-1 at 2, 10.)  Under the agreement, TTR would remit payment to Plaintiff, minus profits.  (Am Compl. ¶ 12; D.E. 86-1 at 2, 11.)  Plaintiff submits that TTR breached the agreement by failing to remit payment to Plaintiff for electronic goods Plaintiff shipped to Amazon.  (Am. Compl. ¶¶ 14, 17; D.E. 86-1 at 2, 11.)  Consequently, Plaintiff's damages total $159,309.17.  (Am. Compl. ¶ 17; D.E. 86-1 at 2, 11.)  Because "[a] consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true," Plaintiff

adequately maintains a breach of contract claim against TTR.[10]  *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotations omitted).

Next, because Plaintiff seeks identical damages for the same conduct under its claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment (*see* D.E. 86-1 at 9–12), Counts II and IV are duplicative of Count I and cannot be maintained as separate causes of action.  *See Sun Nat'l Bank v. Seaford Specialty Surgery Ctr., LLC*, No. 13-5800, 2016 WL 6154894, at *3 (D.N.J. Oct. 20, 2016) (granting default judgment on breach of contract claims noting that where a valid contract exists, a party cannot maintain duplicative causes of action for unjust enrichment and breach of the implied covenant of good faith and fair dealing).

## 2.  Fraud Claim

Plaintiff's remaining claim against TTR for fraud (Count III) is construed as a claim for fraudulent inducement and/or concealment.  "To state a claim for fraud in New Jersey arising out of events surrounding a contractual relationship, a party must allege fraud 'in the original contract, not its non-fulfillment.'"  *Marsala v. Dun & Bradstreet*, No. 10-302, 2010 WL 11570249, at *2 (D.N.J. May 27, 2010) (quoting *Barry By Ross v. N.J. State Highway Auth.*, 585 A.2d 420, 424 (N.J. Super. Ct. Ch. Div. 1990) ("A failure to fulfill a promise may constitute a breach of contract, but it is not fraud and the non-performance of that promise does not make it so.")).  Thus, as a preliminary matter, any alleged misstatement not extraneous to the parties' agreement is considered fraud in the performance, such that the claim is duplicative of Count I for breach of contract.  *See Asco Power Techs., L.P. v. Pepco Techs., L.L.C.*, No. 03-1942, 2006 WL 3000334,

---

[10] Although Plaintiff does not submit a copy of the agreement or any invoices with the Amended Complaint, it does attach "documentation supporting the validity of the agreement," *see TBI Unlimited*, 2016 WL 5660426, at *2, including emails noting TTR's terms and TTR's desire to "fully reconcile [Plaintiff's] accounts" after Amazon withheld payment from TTR.  (*See* Am. Compl. at 12–20, Exs. A, C.)

at *6 (D.N.J. Oct. 20, 2006); *see also Marsala*, 2010 WL 11570249, at *2 (granting motion to dismiss fraud claims as duplicative of a breach of contract claim because plaintiffs did "not plead a claim of fraud in the inducement of the original contract or fraud separate from the contract").

Accordingly, to maintain a claim for fraudulent inducement or concealment, Plaintiff must establish "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Kare Distribution, Inc. v. Jam Labels and Cards LLC*, No. 09-969, 2009 WL 3297555, at *4 (D.N.J. Oct. 9, 2009) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005)). When a party deliberately suppresses "a material fact that should be disclosed [it] is viewed as equivalent to a material misrepresentation . . . which will support a common law fraud action." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J 2009) (internal quotations omitted). However, there is no duty to disclose a fact "unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship,'" such as a fiduciary relationship. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). Furthermore, claims for fraudulent inducement and concealment are subject to the heightened pleading standard of Rule 9(b). *Arcand*, 673 F. Supp. 2d at 305.

Plaintiff's fraud claim is based on alleged misrepresentations concerning (1) TTR's legitimate business practices; (2) TTR's guarantee to raise Plaintiff's "bottom line;" (3) TTR's promise of timely payments to Plaintiff; (4) TTR's promise of "no returns"; and (5) TTR's other allegedly counterfeit products on Amazon. (Am. Compl. ¶¶ 33–34; D.E. 86-1 at 7.) The first and second alleged misrepresentations are "not definite enough to constitute a material misrepresentation of [a] presently existing fact." *See USI Int'l, Inc. v. Festo Didactic, Inc.*, No. 15-8451, 2016 WL 4487858, at *3 (D.N.J. Aug. 24, 2016). Plaintiff provides no specific

statements it relied on that are indicative of TTR's legitimate business practices, nor does Plaintiff contend that its "bottom line" failed to rise from its dealings with TTR.   (*See generally* Am. Compl.; D.E. 86-1.)  Further, the alleged promise of timely payments is duplicative of Plaintiff's breach of contract claim, and therefore cannot be the basis of a simultaneous fraudulent inducement claim.[11]   (*See* Am. Compl. ¶ 22 (alleging that Defendants breached the parties' agreement by "fail[ing] to provide payment for goods delivered by the Plaintiff for sale on Amazon")); *see also USI Int'l*, 2016 WL 4487858, at *3.  Next, while TTR's July 1, 2016 email represented "no [product] returns," Plaintiff's main grievance remains TTR's failure to provide *payment* for goods in violation of the parties' agreement.  (*See* Am. Compl. ¶ 44 ("Defendants also sold and/or received returned products *without providing payment to Plaintiff as per the terms of the agreement*.") (emphasis added).)  Thus, the failure to provide payment for returned goods is also duplicative of Plaintiff's breach of contract claim.  Lastly, although Plaintiff claims that Defendants made "false and fraudulent representations to Plaintiff that Defendants did not sell counterfeit items on Amazon" (Am. Compl. ¶ 33; D.E. 86-1 at 7), Plaintiff fails to identify any alleged misrepresentations with specificity, which, at minimum violates Rule 9(b)'s heightened pleading standard.  (*See generally* Am. Compl.); *see also USI Int'l*, 2016 WL 4487858, at *2 (stating that fraudulent inducement claims are subject to Rule 9(b)'s pleading requirements, including "both the individual who made the misrepresentation and the person to whom the misrepresentation was made").  Even if TTR concealed the alleged fact that it sold counterfeit products, Plaintiff fails to claim the existence of "a special relationship giving rise to [TTR's]

---

[11] Moreover, although Plaintiff contends that TTR's July 1, 2016 email stated that payments would be made in a timely manner (Am. Compl. ¶ 34; D.E. 86-1 at 7), the same email attached to the Amended Complaint contains no such representation.  (Am. Compl. at 12, Ex. A.)

14

affirmative duty to disclose."[12]  *See Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 603 (D.N.J. 2016) ("The mere fact that [p]laintiff trusted and relied on [d]efendant is insufficient to show a special relationship requiring a duty to disclose.") (internal quotations omitted).  Thus, Plaintiff does not establish a cause of action for fraudulent inducement or concealment.

### iv.    Additional Factors

Finally, the Court must address (1) whether TTR has a meritorious defense; (2) whether Plaintiff would be prejudiced should the Court decline to grant default judgment; and (3) whether TTR's conduct is culpable.  *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987).  First, there is no indication that TTR has a meritorious defense to Plaintiff's breach of contract claim.  Despite many opportunities and warnings, TTR has failed to respond to the Amended Complaint, and the alleged facts do not suggest that a meritorious defense exists.[13]  Moreover, TTR's failure to obtain new counsel and defend this action has prejudiced Plaintiff because it "has incurred additional costs, has been unable to move forward with the case, and has been delayed in receiving relief."  *See Aetrex Worldwide, Inc. v. Sourcing For You Ltd.*, No. 14-2504, 2019 WL 1349763, at *2 (D.N.J. Mar. 26, 2019) (citing *Malik v. Hannah*, 661 F. Supp. 2d 485, 490–91 (D.N.J. 2009)).  Finally, TTR's failure to appear or otherwise participate in proceedings after B&P's withdrawal also reflects its culpability.  *See Artilligence, Inc. v. Natrol, Inc.*, No. 12-1167, 2014 WL 5093167, at *3 (D.N.J. Oct. 10, 2014) ("Plaintiffs' complete failure to participate in this lawsuit or communicate with the Court demonstrates their culpability.") (citing *Slover v. Live Universe, Inc.*, No. 08-02645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) (noting that

---

[12] Moreover, there is nothing to suggest that as of July 1, 2016, TTR had knowledge of any counterfeit goods being offered for sale through its Amazon account.

[13] Because "the Court must accept the truthfulness of [Plaintiff's] well pled allegations" where TTR has failed to plead or otherwise respond, *see Knights Franchise Sys., Inc. v. Gauri Shivam LLC*, No. 10-5895, 2011 WL 2909321, at *2 (D.N.J. July 18, 2011), any disruption to TTR's Amazon account is irrelevant as it is alleged that payment to Plaintiff under the agreement was never conditioned on Amazon's payment to TTR.  (*See* Am. Compl. ¶ 19.)

culpability may be presumed when a party "has failed to answer, move, or otherwise respond")).

<strong>v.   Damages</strong>

Although Plaintiff's factual allegations are accepted as true with respect to its motion for default judgment, the Court need not accept allegations that pertain to damages. *See Comdyne I*, 908 F.2d at 1149. Pursuant to Rule 55(b)(2) the court "may conduct hearings" in order "to determine the amount of damages." "A claim for damages is not a 'sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default.'" *Boards of Trustees of operating Engineers Local 825 Welfare Fund v. Robert Silagy Landscaping Inc.*, No. 06-1795, 2006 WL 3308578, at *3 (D.N.J. Nov. 13, 2006) (quoting *KPS Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)). "Such situations include actions on negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." *Id.* (quoting *KPS Assocs.*, at 318 F.3d 19–20). Plaintiff has not submitted documentation to substantiate its claim for damages that relate to purchase orders it fulfilled for TTR, specifically the alleged unpaid balance of $159,309.17.[14] Thus, submission of documentary evidence supporting the amount of damages sought must be provided within 30 days of the date of this opinion.

Accordingly, for the reasons previously stated, Plaintiff's motion for default judgment against TTR is **GRANTED** with respect to its breach of contract claim[15] and **DENIED** as to the remainder of claims.

---

[14] Plaintiff initially claims that in partial satisfaction of the debt owed, Defendants paid $300,000 on March 16, 2017, but when the Amended Complaint was filed on May 24, 2018, only $222,512.59 in inventory was remitted to Plaintiff. (Am. Compl. ¶¶ 15–16.) Plaintiff then maintains that the balance owed to it as of May 24, 2018, is $159,309.17. (Am. Compl. ¶ 17; D.E. 86-1 at 2, 6, 9–10, 12.) It is entirely unclear whether or how the former figures relate to the latter.

[15] As stated above, the total amount of damages is subject to this Court's review of additional documentation to be submitted by Plaintiff.

## B.  Motions for Summary Judgment

### i.  Piercing the Corporate Veil

Plaintiff moves for summary judgment against SM for liability under Counts I–V that hinge on SM's alleged dominion and control over TTR, which "was operated as the alter ego of [SM]." (Am. Compl. ¶¶ 24, 30, 39, 48, 52.)  For personal liability to attach to SM, Plaintiff must show that he pierced TTR's corporate veil "which courts generally will not do absent fraud or injustice." *See Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 127 (D.N.J. 2007). "Personal liability will only be imposed if it is demonstrated that the officer or director disregarded the corporate form and 'utilize[d] the corporation as a vehicle for committing equitable or legal fraud.'" *Id.* (quoting *Marascio v. Campanella*, 689 A.2d 852, 858 (N.J. 1997)).

Under New Jersey law, there are two required elements to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.  Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *State Capital Title & Abstract Co. v. Pappas Bus. Services, LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (quoting *The Mall at IV Group Properties, LLC v. Roberts*, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005)).  The court may consider various factors, including "failure to observe corporate formalities, gross undercapitalization, absence of corporate records, siphoning of funds of the corporation, and the corporation's existence as a façade for the operations of the dominant stockholder." *CHNJ Inv'rs, LLC v. Koger*, No. 12-1467, 2013 WL 1192400, at *8 (D.N.J. Mar. 21, 2013) (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)).

Here, Plaintiff has failed to set forth any evidence to allow this Court to conclude that there is no genuine issue of material fact with respect to SM's complete dominion and control over TTR.

Although Plaintiff alleges that "[u]pon information and belief, [SM] exercised complete control and domination of the finances, policy, and business practices of [TTR] to such an extent that [TTR] had no independent identity of its own . . . . [and] treated [TTR's] bank account and credit cards as his own and commingled the funds of [TTR] with his personal account" (*see* Am. Compl. ¶¶ 49–50), Plaintiff entirely fails to substantiate these accusations after the close of fact discovery. For example, Plaintiff deposed SM (*see* Plt. SMF ¶ 37; Blaker Cert. ¶ 38), and yet did not include any quotation or portion of SM's deposition transcript in the record submitted to this Court.  (*See generally* Plt. SMF; *see also* Blaker Cert.)  The record does not contain a single bank or credit card statement, financial document or any other indicia of SM's alleged exercise of dominion and control over TTR.  Rather, Plaintiff rests its argument on one employment agreement from 2015 "executed between [SM] and [TTR] in which he received 5% ownership of the company after 12 months of employment."  (D.E. 87-2 at 4 (citing Blaker Cert. at 94–103, Ex. N.))  Plaintiff continues that "[b]y [SM's] complete exercise of dominion and control, [TTR] was operated as the alter ego of [SM]."  (*Id.*)  No reasonable juror could conclude that this agreement, purporting to convey a mere 5% ownership to SM, evidences his "complete" control over TTR.  In addition, contrary to Plaintiff's contention, the agreement was never executed.  (*See* Blaker Cert. at 94–103, Ex. N (reflecting no signatures).)  Second, the document is not a final version because it contains multiple track changes and a watermark denoting "Redline" stamped across each page.  (*See id.*)

Notwithstanding that SM's employment and/or ownership status is a disputed fact, there is not one iota of evidence to suggest that SM disregarded corporate formalities and shared a unity of interest and ownership in TTR which extinguished their separate personalities.[16]  *See Corestar*,

---

[16] Thus, even if SM owned 5% of TTR as Plaintiff suggests, there is no indication that SM exercised complete dominion and control over TTR.  *See City of Atl. City v. Zemurray St. Capital, LLC*, No. 14-5169, 2017 WL 6638203, at \*19 (D.N.J. Dec. 29, 2017) ("Simply showing ownership falls far short of showing the disregard of corporate

513 F. Supp. 2d at 128 (granting summary judgment in favor of individual corporate officers because plaintiff failed to present evidence that they "acted in any capacity other than" their respective executive roles); *see also City of Atl. City*, 2017 WL 6638203, at *19 (granting defendants' motion for summary judgment on all claims because plaintiff did not meet its burden in showing the abuse of corporate formalities). For these reasons, SM's cross-motion for summary judgment on Counts I–V is granted.

### C.  Plaintiff's Motions for Sanctions

#### i.    Rule 37 Sanctions

Plaintiff moves to impose sanctions under Rule 37 against SM, TTR, and B&P, for failure to produce discovery pertaining TTR's now dismissed Counterclaims. (D.E. 86-1 at 12–16; D.E. 87-2 at 7–12.) Plaintiff maintains that Defendants, along with their former counsel B&P,[17] knew that TTR's Counterclaims—premised on Plaintiff's alleged role in providing TTR with counterfeit goods—were frivolous. Plaintiff contends that Defendants and B&P intentionally withheld documents, specifically TTR's settlement agreements with Apple and Amazon, which allegedly substantiated that Plaintiff did not provide TTR counterfeit products. (D.E. 86-1 at 13; D.E. 87-2 at 9.) The Apple agreement, executed in July 2017 (Blaker Cert. at 58, Ex. H.), was purportedly referenced in SM's certification attached to his December 13, 2017 motion to dismiss the original complaint which was filed by B&P on his behalf. (D.E. 86-1 at 15, 18; D.E. 87-2 at 10.) Defendants' Answer and TTR's Counterclaims were filed on June 19, 2018. (D.E. 12.)

Relevant here, on March 9, 2020, Judge Wettre denied Plaintiff's previous motion for Rule

---

formalities, as business entities are formed for the very purpose of insulating individual owners and related companies from liability.")

[17] B&P formerly represented both TTR and SM at the time SM filed a motion to dismiss on December 13, 2017. (*See* D.E. 3-1, 3-8.) SM retained substitute counsel on June 5, 2019. (*See* D.E. 44.) B&P was relieved as counsel for TTR on January 2, 2020. (D.E. 77.)

37 sanctions against Defendants for failure to identify a discovery order that was violated.  (D.E. 82 at 5.)  Now, Plaintiff adds B&P as an intended recipient of the requested Rule 37 sanctions and claims that the Court's February 13, 2019 Order requiring fact discovery to be completed by April 30, 2019 (*see* D.E. 31), was violated.[18]  (D.E. 86-1 at 14; D.E. 87-2 at 9.)  The record also reflects that on April 4, 2019, the Court extended fact discovery again through May 31, 2019.  (D.E. 34.)  On May 10, 2019, B&P wrote to the Court in response to Plaintiff's April 30, 2019 request to file a motion to strike Defendants' Answer for failure to comply with discovery requests:

> Defendants' counsel did agree to reach out to Defendants to have them search for any communications in the categories described by the Letter. Consistent with that agreement and our continuing obligations, we have forwarded that request to our clients. To date, our clients have not located any responsive documents. Defendants extant responses and production are compliant and this firm is not in possession of any additional documents responsive to Plaintiffs requests.

(D.E. 35; D.E. 37 at 2; Blaker Cert. at 42, Ex. E.)  On June 19, 2019, after multiple telephone conferences and a letter from Plaintiff filed on May 13, 2019, seeking leave to file sanctions for Defendants' failure to comply with discovery (*see* D.E. 38), the Court ordered all outstanding written discovery to be produced by June 28, 2019.  (D.E. 51.)  Plaintiff concedes that it "received the requested discovery" by the June 28, 2019 deadline.  (D.E. 86-1 at 15; D.E. 87-2 at 11.)

As a preliminary matter, because there are no remaining counterclaims for this Court to dismiss as a type of sanction, the alleged misconduct will not be explicitly reviewed under each *Poulis* factor.  *See Hogan*, 536 F. App'x at 211–12 (stating that a finding of bad faith under the *Poulis* factors "is merely one factor to consider . . . in imposing th[e] more drastic sanction [of dismissal]" and is not required before imposing monetary sanctions pursuant to Rule 37(b)).  The Court may still, however, impose attorneys' fees as an alternative sanction pursuant to Rule

---

[18] The original deadline for fact discovery was set for February 28, 2019.  (D.E. 27.)

37(b)(2)(C) for failure to comply with this Court's February 13, 2019 and April 4, 2019 discovery orders.  Importantly, "[s]anctions may be appropriate when a party has pointedly withheld, despite orders to produce, especially relevant or detrimental documents."  *Virtual Studios*, 2015 WL 6150944, at *3 (citing *Gallant v. Telebrands Corp.*, 35 F. Supp. 2d 378, 404 (D.N.J. 1998)) (stating that "Rule 37(b) authorizes the imposition of reasonable expenses incurred by a party's derelict discovery practices, unless the violation is 'substantially justified.'").

Because Plaintiff provides nothing to suggest that the representations made in B&P's May 10, 2019 letter were false, the Court declines to impose Rule 37 sanctions against B&P.  There is no indication that B&P acted in bad faith, had possession of the Apple/Amazon agreements prior to its May 10, 2019 letter, or withheld other relevant discovery.  Plaintiff asks this Court to infer that B&P had possession of the Apple agreement because it filed SM's December 13, 2017 certification in which the agreement was merely referenced.  The Court will not entertain Plaintiff's unsupported assumption.  Accordingly, Plaintiff's motion for Rule 37 sanctions against B&P is denied.

On the other hand, TTR must have possessed the agreement that it reached with Apple, which was executed in July 2017 and eventually produced by June 28, 2019.  (*See* D.E. 86-1 at 15–16 (citing Blaker Cert. at 51, Ex. H.))  Because TTR has failed to appear, there is no justified reason before the Court explaining why this documentation was withheld.  When viewed in light of the parties' docketed letters, court conferences, and discovery extensions spanning nearly four months, the Court finds it appropriate to sanction TTR under Rule 37(b)(2)(C) for failure to obey the Court's February 13, 2019 and April 4, 2019 orders.  *See Barkouras v. Hecker*, No. 06-366, 2007 WL 777664, at *8 (D.N.J. Mar. 12, 2007) (awarding attorneys' fees under Rule 37 where defendants failed to produce a document containing information on a significant issue).  Because

it is unclear whether SM possessed the Apple agreement or had been involved with TTR during the discovery period, Rule 37 sanctions will not be imposed against SM.  In sum, Plaintiff's motion for Rule 37 sanctions against TTR in the form of reasonable attorneys' fees is granted, and its motion for Rule 37 sanctions against SM is denied.

Plaintiff requests $29,500 in attorneys' fees from TTR.  (D.E. 86-1 at 6.)  Although Plaintiff submits multiple invoices from counsel, it did not provide totals for each invoice or counsel's hourly rate, and further failed to explain why many billing entries are entirely redacted. (*See* Blaker Cert., at 64–83 Ex. J.)[19]  Moreover, the corresponding certification is from Plaintiff's President, not Plaintiff's counsel.  (*See* D.E. 86-2 ¶ 1.)  Thus, supplemental documentation from Plaintiff's counsel in the form of a declaration or affidavit detailing its fees and costs, including the total number of hours spent at a given billing rate, is required and must be submitted within 30 days of the date of this opinion.

### ii.    Rule 11 Sanctions

Finally, Plaintiff also moves to impose sanctions under Rule 11 against SM, TTR, and B&P for "fil[ing] a frivolous Counterclaim."  (D.E. 86-1 at 17; D.E. 87-2 at 12.)  Plaintiff's arguments for the imposition of sanctions under Rule 11 are nearly identical to its arguments set forth under Rule 37, adding that Plaintiff was forced to conduct depositions of SM and a TTR representative "and question them about the veracity of [TTR's] Counterclaim[s]."  (*Compare* D.E. 86-1 at 12–16 and D.E. 87-2 at 7–12, *with* D.E. 86-1 at 17–20 and D.E. 87-2 at 12–15.)

For the same reasons noted above, Rule 11 sanctions are not warranted: there is no objective indication that B&P acted unreasonably under the circumstances in filing or declining to

---

[19] The Court notes that Exhibit J to the Blaker Certification submitted in support of Plaintiff's motion for summary judgment (D.E. 87-3) is identical to Exhibit J in the Blaker Certification submitted in support of its motion for sanctions against TTR (D.E. 86-2).

withdraw TTR's now dismissed Counterclaim.[20]  *See, e.g.*, *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 481 (D.N.J. 2014).  Moreover, this is not an exceptional circumstance in which sanctions would be appropriate.  Thus, Plaintiff's motion for Rule 11 sanctions against B&P is denied.

Next, by its plain terms, Rule 11(b) applies to either "an *attorney* or *unrepresented party*" who presents "a pleading, written motion, or other paper" to the court.  (emphasis added).  Under Rule 11(c), sanctions are available to "any attorney, law firm, or party that violated the rule or is responsible for the violation."  Sanctions are not warranted against TTR nor SM because neither filed "a pleading, written motion, or other paper" in connection with TTR's Counterclaims as an unrepresented party.  At the time TTR maintained its allegedly frivolous Counterclaims, both TTR and SM were represented by B&P.  (*See supra* Section IV.C.i, n.17).  Thus, because it has already been concluded that B&P did not violate Rule 11(b), there is no violation for which this Court can hold the Defendants responsible under Rule 11(c).  Accordingly, Plaintiff's motions for Rule 11 sanctions against the Defendants are denied.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment is **GRANTED in part** and **DENIED in part**; Plaintiff's Motion for Summary Judgment is **DENIED**; SM's Cross-Motion for Summary Judgment is **GRANTED**; Plaintiff's Motion for Sanctions pursuant to Rule 37 against TTR is **GRANTED**; Plaintiff's Motions for Sanctions pursuant to Rule 37 against SM

---

[20] In any event, it appears that Plaintiff failed "to comply with Rule 11(c)(2), which requires that a sanctions motion be 'made separately from any other motion,' and that it be served but not 'filed or . . . presented to the court if the challenged [action] is withdrawn or appropriately corrected within 21 days after service [.]'"  *Metro. Life Ins. Co. v. Kalenevitch*, 502 F. App'x 123, 124 (3d Cir. 2012) (quoting Fed. R. Civ. P. 11(c)(2)).  Here, Plaintiff did not file its Rule 11 motions separate from its motions for default judgment, summary judgment, and sanctions under Rule 37. (*See* D.E. 86, 87.)  In addition, notwithstanding Plaintiff's February 14, 2019 letter to B&P threatening Rule 11 sanctions (*see* D.E. 94 at 4 (citing D.E. 86-2, Ex. C)), it is not apparent to this Court that Plaintiff served its Rule 11 motion on B&P 21 days before it was filed on April 9, 2020.

and B&P are **DENIED**; and Plaintiff's Motions for Sanctions pursuant to Rule 11 against B&P

and Defendants are **DENIED**.  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
           Parties

24