UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIMAVEN, INC., <br><br> Plaintiff, <br><br> v. <br><br> TEXAS TR, LLC and SAM MARINO, <br><br> Defendants. | Docket No. 2:17-cv-12008-SDW-LDW <br><br><br> <u>Civil Action</u> |

**BRIEF OF PLAINTIFF IN IN SUPPORT OF MOTION TO AMEND AND SUPPLEMENT THE COMPLAINT**

**Rubenstein Business Law**
**100 Horizon Center Boulevard**
**Hamilton, NJ 08691**

**DAVID RUBENSTEIN, ESQ.**
**Of Counsel and On the Brief**

1

**STATEMENT OF FACTS**

Plaintiff is a New Jersey company in the business of selling electronic parts and equipment (Apple brand products, iPads, Macintosh parts, etc.), Microsoft Surface Touch and accessories, along with other electronic products and accessories.

On July 13, 2016, Defendant TEXAS TR, LLC ("Defendant") contracted with Plaintiff to establish a business relationship, and enter into an agreement whereby Plaintiff would provide products/goods to TEXAS TR to be sold on Defendant's Amazon account. Defendant would advertise Plaintiff's products on their Amazon account, and when a product(s) sold, Amazon would submit a purchase order to TEXAS TR listing the items that were sold. Defendant would then forward the purchase order from Amazon to the Plaintiff listing the items that Plaintiff were to ship directly to Amazon's drop ship.

After Plaintiff shipped the products/goods, Amazon would pay TEXAS TR who would then remit the proceeds from the sale of the products/goods, less the profit kept by TEXAS TR, to Plaintiff. This process was completed several times without any late payments, after which Defendants began making late payments on numerous occasions. On November 23, 2016, Defendants ceased payments entirely. On March 16, 2017, Defendants made a one-time payment of $300,000, leaving a balance of $159,309.17, which is still due and owing to the Plaintiff.

Plaintiff filed its initial Complaint on October 17, 2017. See Exhibit A. After several years of litigation, on October 5, 2020, the Court entered Final Judgment against the Defendant TEXAS TR, LLC for $159,309.17 in compensatory damages and $17,609.43 in Attorney's Fees as a Sanction against TEXAS TR, LLC for failing to respond to discovery and lying to the Court. See Exhibit B. TEXAS TR, LLC has not paid any of this amount to Plaintiff.

Through supplementary discovery, Plaintiff has learned that, during and after the litigation,

2

TEXAS TR, LLC engaged in efforts to hinder, delay or defraud Plaintiff as a creditor. In 2018-2019, while this case was pending, TEXAS TR, LLC received over $275,000. Rather than paying TEXAS TR, LLC's debt to Plaintiff, TEXAS TR, LLC transferred the funds to what appear to be personal, separate bank accounts and to the Defendant's Members directly. Defendant's Members are Efraim Mandel, Kenneth Levy, and Wanda Levy. The following transactions demonstrate TEXAS TR, LLC's efforts to hinder, delay or defraud Plaintiff as a creditor.

- 1/2/18 – Transferred $2750 to Levy (not identified if this is Ken Levy or Wanda Levy)
- 1/16/18 – Transferred $1250 to Levy (not identified if this is Ken Levy or Wanda Levy)
- 2/7/18 – Transferred $1928.97 to Levy (not identified if this is Ken Levy or Wanda Levy)
- 10/31/18 – Transferred $1800 to Mandel
- 11/23/18 – Transferred $3000 to Mandel
- 1/9/19 - 1/20/19 - Transferred $90K to checking account 4748
- 2/7/19 - transferred $12,500 to checking account 2763
- 2/14/19 - transferred $32K to checking account 2763
- 4/10/19-4/22/19 - transferred almost $50K to checking account 2763
- 5/13/19 – transfer in from Amazon for $96,847.79, transferred out same day $96,600 to checking account 2763

See Exhibit C.

Furthermore, after the Judgement was entered on October 5, 2020, TEXAS TR, LLC continued its efforts to hinder, delay or defraud Plaintiff as a creditor. On November 6, 2020 – one month after the Judgement – TEXAS TR, LLC received $104,958.10 into its bank account. Rather than paying its debt to Plaintiff, following that transaction, TEXAS TR, LLC made the following transactions:

- 11/6/20 - Wire to Ken Levy $5376, Zelle Transfer to Mandel $10K
- 12/3/20 - Transfer to Mandel for $15K
- 12/9/20 - Transfer to Mandel for $1241

See Exhibit D.

Under the Uniform Fraudulent Transfer Act N.J.S.A. 25:2-20 ("U.F.T.A."), the purpose of the U.F.T.A. "is to prevent a debtor from placing his or her property beyond a creditors reach." (Pl. Br., ECF No. 148-1, at 15) (citing Gilchinsky v. National Westminister Bank N.J., 159 N.J. 463, 732 A.2d 482 (1999). N.J.S.A. 25:2-25 defines when transfers are fraudulent:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditors' claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transactions; or
>
> (2) Intended to incur, or believed to reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. 25:2-25.

Under U.F.T.A., any creditor "with or without a judgment may (1) prosecute a suit to avoid the transfer to the extent necessary to satisfy the claim; (2) to attach or otherwise secure provisionally the asset transferred; and (3a) to enjoin further disposition of the asset transferred or other property or (3b) to appoint a receiver. Id. at 405. A creditor "that is successful on a claim for fraudulent transfer can undo the fraudulent transaction 'so as to bring the property within the ambit of collection.'" Id. (quoting Klein v. Rossi, 251 F. Supp. 1, 2 (E.D.N.Y 1966)).

Here, "badges of fraud" are present that demonstrates that claims against Defendant for fraudulent conveyance is not futile. In determining the intent of the Defendant, N.J.S.A. 25:2-26 provides a list of factors to consider:

    a. The transfer or obligation was to an insider;

    b. The debtor retained possession or control of the property transferred after the transfer;

    c. The transfer or obligation was disclosed or concealed;

    d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

    e. The transfer was of substantially all the debtor's assets;

    f. The debtor absconded;

    g. The debtor removed or concealed assets;

    h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

    i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

    j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

    k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Plaintiff contends that numerous badges of fraud exist to demonstrate that the proposed claim against Defendant is not futile. The following are the badges of fraud Plaintiff identifies since the filing of the Complaint:

    a. Defendant transferred over $275,000 in 2018- 2019 to what appear to be personal, separate accounts and to the Defendant's Members personally, while the Complaint was pending.

    b. Defendant received over $100,000 in 2020 after the Judgment was entered and sent transfers of over $30K to the LLC's members, Mandel and Ken Levy.

    c. The above transfers represent a substantial amount of the assets in the Defendant's bank accounts, which are now near zero.

    d. The above transfers were not disclosed to Plaintiff in discovery. Plaintiff only learned of these transfers via Subpoena to Bank of America.

    e. Defendant claimed insolvency shortly thereafter and has not paid any of the Judgment amounts owed to Plaintiff.

    f. The Defendant did not receive any valuable consideration for these transfers.

Based on the above, the Court should find that Plaintiff has stated factual allegations that, if true, would establish that Defendant transferred funds with (a) actual intent to hinder, delay or defraud any creditor of the debtor and (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation. Moreover, the Court should find that Defendant's transfer of property and funds to its Members Mandel, Ken Levy, and family members after the filing of the Complaint serve as badges of fraud for the purpose of this analysis. The Court should therefore grant Plaintiff's motion to amend its pleading to add a count for fraudulent conveyance against Efraim Mandel, Kenneth Levy, and Wanda Levy.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Amend.

Dated: July 22, 2022

                                  Rubenstein Business Law
                                  Attorneys for Plaintiff

                                By: s/ **David Rubenstein**
                                  David Rubenstein, Esq.
                                  RUBENSTEIN BUSINESS LAW
                                  100 Horizon Center Boulevard
                                  Hamilton, NJ 08691

Ph: (609) 528-5673
Fax: (609) 528-5601

7